USCA1 Opinion

 

 July 13, 1994 [NOT FOR PUBLICATION] UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT ____________________ No. 94-1051 ROBERT LAWRENCE, Plaintiff, Appellant, v. PROVIDENCE COLLEGE, ET AL., Defendants, Appellees. ____________________ APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF RHODE ISLAND [Hon. Ronald R. Lagueux, U.S. District Judge] ___________________ ____________________ Before Torruella and Stahl, Circuit Judges, ______________ and Carter,* District Judge. ______________ ____________________ Harold E. Krause for appellant. ________________ Marifrances McGinn with whom Richard P. McMahon and McMahon & __________________ __________________ _________ McMahon were on brief for appellees. _______ ____________________ ____________________ _____________________ *Of the District of Maine, sitting by designation. -2- CARTER, Chief District Judge. ____________________ This is an appeal by Robert Lawrence from the district court's grant of summary judgment in favor of Defendants, Providence College; Father John Cunningham, President of Providence College; Dr. Francis MacKay, former Vice President of Providence College; and Helen Caldwell, director of the marketing program at Providence College. I. FACTUAL BACKGROUND _____________________ Appellant Lawrence was hired as an adjunct assistant professor in the Business Department of Providence College for three consecutive one-year terms: 1988-89, 1989- 90, 1990-91. Each year the parties signed a written agreement to cover the upcoming academic year and providing that Lawrence would be an Adjunct Assistant Professor in Business.1 Before the expiration of the Lawrence's contract for the 1990-91 academic year, he was notified that he would not be offered another teaching contract. Lawrence's complaint alleges that Providence College, and members of its faculty, breached three types of oral promises made to him. First, the complaint alleges that in June of 1987, before he started to work at Providence ____________________ 1There is no dispute that all of these contracts were fully performed by the parties. College, Defendants MacKay and Caldwell promised that he would be placed in a tenure-track position in the Business Department in 1988. In July of 1988, Lawrence was offered and accepted an adjunct faculty position. At that time, Lawrence contends that he was assured by MacKay and Caldwell that a tenure-track position would be opened for him in 1989-90. The second oral contract consists of an alleged promise made in the summer of 1990, when MacKay assured Lawrence of his support in placing him in a tenure-track position.2 Finally, Lawrence alleges that in the fall of ____________________ 2This Court views Appellant's favorable reading of MacKay's alleged promise with skepticism. The "promise" was contained in a memorandum from MacKay to Appellant dated August 22, 1990. The memorandum, in its entirety, states: Your work on the MFAT in Business Administration is surely a noteworthy contribution to the field. Your continuing association with ETS attests to the quality of the efforts you have made. I was glad to hear that you are near to completion of the work on your doctorate. There would be complications with the tenure process if a shift to ordinary faculty were not done in the next two years. Later, Lawrence characterizes the memorandum even more favorably. In his affidavit submitted in support of his response to Defendants' motion for summary judgment he states: "I received a memo from Dr. MacKay . . . indicating -4- -4- 1990, MacKay told him that his case would be presented to the Committee on Academic Tenure and Rank sometime during the spring term. The district court found that the alleged oral agreement between the parties regarding a tenure-track position was barred by the parole evidence rule because the terms of the oral agreement were contradictory to the complete and fully integrated written agreements. In discussing the oral assurances given by members of the college the district court stated: "It's clear to me that [the assurances] would create only a hope that at some future time he would be put in a tenure-track position." Hearing Transcript at 8. The court concluded that "Providence College had no contractual obligation . . . to put [Lawrence] on a tenure track or grant him tenure." Id. ___ Finding no disputed material issues of fact, the district court granted Defendants' motion for summary judgment. II. DISCUSSION ______________ This Court's review of a district court's disposition of a motion for summary judgement is plenary, Mesnick v. General Elec. Co., 950 F.2d 816, 822 (1st Cir. _____________________________ ____________________ that he wanted to switch me to ordinary faculty or a tenure- track position within a two (2) year period." This is obviously not the thrust of MacKay's memorandum. -5- -5- 1991), cert. denied, ___ U.S. ___, 112 S.Ct 2965, 119 L.Ed. ____ ______ 586 (1992); Griggs-Ryan v. Smith, 904 F.2d 112, 115 (1st _____________________ Cir. 1990), and requires the court to determine whether "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). In this diversity action, the substantive law of Rhode Island controls. The Court will discuss each of the three alleged oral promises in turn. First, Lawrence claims that he was promised a tenure-track position on at least two separate occasions: June 1987 and July 1988. Subsequent to each of these alleged promises, Lawrence signed a one-year adjunct faculty contract with Providence College. Appellant argues that these oral agreements with Providence College are not barred because the terms are collateral to the terms of the written agreements. Specifically, Plaintiff contends that the one-year term of the contract was incomplete because it was silent as to tenure status and future employment. Appellees respond arguing that the term and status of Lawrence's adjunct teaching position was an unambiguous and integral part of the written agreements. Therefore, a multi-year, tenure-track position was expressly precluded from the one-year contracts. -6- -6- Appellant's claim focuses the Court's attention on both the duration and status of his employment and whether the collateral oral agreements should be considered to alter the written contracts. Appellant argues that the written contracts were silent as to tenure-track position. Although this statement is true, the contracts provide that Lawrence's position is that of an Adjunct Assistant Professor in Business. The Providence College Faculty Manual, specifically incorporated into the written employment contracts, breaks down the faculty designation in three broad categories: Ordinary Faculty, Special Faculty and Emeriti. The Adjunct Faculty designation falls only under the classification of Special Faculty.3 Tenure ____________________ 3Although more than one version of the Faculty Manual existed over the life of the three consecutive one-year contracts, the provisions relating to faculty designation remained the same. Ordinary Faculty is described, in part, as The Ordinary Faculty consist of those who hold one of the following academic ranks: Professor, Associate Professor, Assistant Professor, Instructor. . . . Those holding membership in the Ordinary Faculty enjoy the rights, privileges and responsibilities relating to salary, tenure, tuition remission, leaves, retirement and College administration as they are set forth in this Manual. -7- -7- ____________________ Faculty Manual at 7. Special Faculty is described, in part, as Personnel holding one of the below- designated ranks are appointed for specific terms (one semester, one year, three years, etc.) to fill a specific need. Status, rank and term of service are established at the time the contract is awarded for the term of the contract. While contracts may be renewed, no renewal is automatic and the tenure ______ provisions applicable to members of __________ the Ordinary Faculty are specifically excluded from this ____________ ________ category. . . . . Adjunct Faculty - Personnel engaged as full or part-time faculty, whose appointment is to be reviewed by the Committee on Academic Rank and Tenure prior to the awarding of the initial contract and any subsequent contract in a category other than that of the original contract. Those serving on a full-time basis will have their benefit entitlements, if any, specified in writing at the time of appointment. . . . . . . . . . . . . Other Adjunct Ranks - Those who serve full-time appointments usually associated with an -8- -8- eligibility and tenure procedures at Providence College apply only to Ordinary Faculty, as defined in the Faculty Manual. With regard to duration of employment, the contract's limitation to one year is an explicit statement that it will not extend beyond one year. Appellant suggests that entering into a one-year contract does not exclude a tenure-track or multi-year position. Although this may be true in some instances, the facts of this case do not support such a claim. The Providence College Faculty Manual specifically provides that tenure-track positions fall under a different category than adjunct positions and that tenure provisions are not applicable to the adjunct category. See ___ supra n.3. _____ ____________________ academic department in one of the following ranks: Adjunct Instructor, Adjunct Assistant Professor, Adjunct _______ Associate Professor ___________________ and Adjunct Professor. Such adjunct faculty must possess academic qualifications that would otherwise admit them to the Ordinary Faculty. Id. at 7-9 (emphasis added). ___ -9- -9- In sum, the written agreement was complete with respect to the nature and duration of Appellant's employment. The promise of a tenure-track position asserted by Appellant to be a collateral part of the parties agreement is inconsistent with the express terms of the written contracts. In each instance, the promise was followed by a fully integrated written contract. Hence, the district court was correct in applying Rhode Island's parole evidence rule to exclude evidence of the earlier negotiated inconsistent terms of employment. Industrial National Bank ________________________ v. Peloso, 121 R.I. 305, 397 A.2d 1312, 1314 (1979)("parol _________ evidence rule merely renders inadmissible any evidence of prior or contemporaneous collateral agreements aimed at altering, varying or contradicting a written document"); American Underwriting Corp. v. Rhode Island Hospital Trust ____________________________________________________________ Co., 111 R.I. 415, 303 A.2d 121 (1973); Supreme Woodworking ___ ___________________ Co. v. Zuckerberg, 82 R.I 247, 107 A.2d 287 (1954). _________________ Appellant alleges that MacKay made two additional promises to him. Although not specifically mentioned by the district court in its decision, the inclusion of the promises in Lawrence's complaint warrants a brief discussion. The alleged promises -- that MacKay would support Appellant's shift from special to ordinary faculty -10- -10- and that MacKay would present Appellant as a candidate to the Committee on Academic Tenure and Rank -- occurred after _____ the final contract was signed and are not supported by any consideration. Hayes v. Plantations Steel Co., 438 A.2d ________________________________ 1091, 1094 (R.I. 1982)("In this jurisdiction, consideration consists either in some right, interest, or benefit accruing to one party or some forbearance, detriment, or responsibility given, suffered, or undertaken by the other."); Dockery v. Greenfield, 86 R.I. 464, 136 A.2d 682 _____________________ (1957); Darcey v. Darcey, 29 R.I. 384, 71 A. 595 (1909). As ________________ such these claims facially fail the test of an enforceable contract. The court concludes, therefore, that the district court properly granted Defendants motion for summary judgment. The judgment of the district court is AFFIRMED. ________ -11- -11-