Kathleen DELUCA

v.

CITY OF CRANSTON et al.

No. 2009–317–APPEAL.

Supreme Court of Rhode Island.

June 29, 2011.

Michael P. Lynch.

Randall L. Souza.

### ORDER

The plaintiff, Kathleen DeLuca, appeals from an entry of judgment in the defendants' favor with respect to all counts in the plaintiff's complaint, the hearing justice in the Superior Court having granted the defendants' motion for summary judgment. On appeal, the plaintiff contends that the hearing justice erred by (1) determining, with reference to the plaintiff's breach-of-contract claim, that no contract had been formed; and (2) by ruling that the doctrine of futility did not excuse the plaintiff's failure to have exhausted her administrative remedies before pursuing the instant civil action.

This case came before the Supreme Court for oral argument pursuant to an order directing the parties to appear and show cause why the issues raised in this appeal should not be summarily decided. After considering the record, the memoranda submitted by the parties, and the oral arguments of counsel, we are satisfied that cause has not been shown and that this appeal may be decided without further briefing or argument.

For the reasons set forth herein, we affirm the judgment of the Superior Court.

On January 8, 2003, the plaintiff, Kathleen DeLuca, filed a complaint in the Superior Court for Providence County, which she amended shortly thereafter on February 21, 2003. In her amended complaint, Ms. DeLuca named as defendants the City of Cranston and Randi Rossi, in his capacity as treasurer of the City of Cranston. The complaint contained two counts, both arising from the termination of her employment with the City of Cranston: count one, alleging breach of contract, arising from a purported "agreement" between the City of Cranston and plaintiff with respect to her employment; and count two, alleging that plaintiff's employment had been terminated "in violation of applicable civil service rules and regulations, provisions of the collective bargaining agreement, city charter provisions and other applicable regulations." There is no dispute between the parties as to the basic facts pertaining to Ms. DeLuca's case, although there is as to the significance thereof.

Ms. DeLuca was employed by the City of Cranston as city treasurer and acting director of finance. By letter dated October 20, 1997, then-Mayor Michael Traficante informed plaintiff that she was being suspended "due to the action taken as a result of Grand Jury Indictments issued" on that same day.[1] Thereafter, Ms. DeLuca received another letter from Mayor Traficante, dated May 1, 1998, which reads in pertinent part as follows:

"The City of Cranston and I, as Mayor, agree that your salary will be placed in the surplus account during the duration of your suspension and it is further agreed that if you are acquitted and/or exonerated or if the case is dismissed, you will be reinstated immediately at your position of City Treasurer and you will receive full back pay with interest including all benefits to which you have been entitled pursuant to the Collective Bargaining Agreement between the City of Cranston and the Municipal Employees Union or any other lawful regulation.

"If and when you are acquitted, exonerated or the case against you is dismissed, your reinstatement shall also include any salary, pay grades or benefits that you would have been entitled to and all salary and benefits shall be paid retroactively from the day you were suspended."

The plaintiff's breach-of-contract claim (count one) is based upon certain statements made in this letter of May 1, 1998.

Effective November 8, 1999, plaintiff's employment with the City of Cranston was terminated; the "Termination Notice" indicates that the reason for that action was: "Change in Administration." On November 20, 2001, Ms. DeLuca pled *nolo contendere* to two counts of filing a false document. As previously indicated, plaintiff commenced a two-count civil action on January 8, 2003.

On October 17, 2008, defendants' filed a motion for summary judgment with respect to both counts in Ms. DeLuca's amended complaint. In their memorandum in support of their motion for summary judgment, defendants argued (1) that "no contract actually exists" to support count one because the May 1998 letter did not satisfy certain elements that are required for there to be an enforceable contract; and (2) that "plaintiff failed to

---

**1.** According to the October 20, 1997 letter that is referred to in the text, Ms. DeLuca had been charged by indictment with one count of conspiracy to violate the Rhode Island Racketeer Influenced and Corrupt Organizations Act, one count of participating in a racketeering enterprise, and four counts of bribery of a public official.

exhaust her administrative remedies to appeal her termination * * * ."

On February 24, 2009, a hearing was held on the motion for summary judgment. With respect to count one and the existence *vel non* of an enforceable contract, the hearing justice ruled that plaintiff failed to show that the requisite elements of an enforceable contract were present. The hearing justice ruled, *inter alia*, that "plaintiff ha[d] failed to demonstrate *consideration* for the Mayor's promise." (Emphasis added.)

With respect to the argument that plaintiff failed to exhaust her administrative remedies, the hearing justice first noted that "[i]t is undisputed that the plaintiff did not challenge her suspension pursuant to the city charter provisions or the city civil service rules;" the hearing justice further noted that it was "undisputed that the plaintiff appealed her termination but that the appeal was untimely * * * ." The hearing justice then determined that Ms. DeLuca had "failed to come forward with admissible evidence to demonstrate a genuine dispute about the alleged futility of challenging her termination in accordance with the established procedures."

The hearing justice proceeded to grant defendants' motion for summary judgment with respect to both counts of plaintiff s amended complaint. On March 6, 2009, an order entered granting defendants' motion for summary judgment; final judgment entered on the same day. On March 25, 2009, plaintiff filed a timely notice of appeal.

We review a hearing justice's grant of summary judgment in a *de novo* manner. *Papudesu v. Medical Malpractice Joint Underwriting Association of Rhode Island,* 18 A.3d 495, 497 (R.I.2011); *see also Beacon Mutual Insurance Co. v. Spino Brothers, Inc.,* 11 A.3d 645, 648 (R.I.2011); *Estate of Giuliano v. Giuliano,* 949 A.2d 386, 391 (R.I.2008). In so doing, this Court applies the same standards and rules as did the hearing justice. *Planned Environments Management Corp. v. Robert,* 966 A.2d 117, 121 (R.I.2009); *see also McNulty v. City of Providence,* 994 A.2d 1221, 1224 (R.I.2010); *Estate of Giuliano,* 949 A.2d at 391. This Court will affirm a hearing justice's grant of summary judgment "if there exists no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *Lynch v. Spirit Rent–A–Car, Inc.,* 965 A.2d 417, 424 (R.I.2009); *Alves v. Hometown Newspapers, Inc.,* 857 A.2d 743, 750 (R.I.2004).

This Court has previously itemized in straightforward language the elements that must be present for there to be a valid contract; those elements are "competent parties, subject matter, a *legal consideration,* mutuality of agreement, and mutuality of obligation." *DeAngelis v. DeAngelis,* 923 A.2d 1274, 1279 (R.I.2007) (emphasis added) (internal quotation marks omitted); *see also Rhode Island Five v. Medical Associates of Bristol County, Inc.,* 668 A.2d 1250, 1253 (R.I. 1996). With respect to the consideration requirement, we have stated that consideration "consists of 'some legal right acquired by the promisor in consideration of his promise, or forborne by the promisee in consideration of such promise.'" *DeAngelis,* 923 A.2d at 1279 (quoting *Darcey v. Darcey,* 29 R.I. 384, 388, 71 A. 595, 597 (1909)). When evaluating the sufficiency of contractual consideration, we employ "the bargained-for exchange test." *DeAngelis,* 923 A.2d at 1279. The bargained-for exchange test "provides that something is bargained for, * * * 'if it is sought by the promisor in exchange for his [or her] promise and is given by the promisee in exchange for that promise.'" *Id.*

(quoting *Filippi v. Filippi*, 818 A.2d 608, 624 (R.I.2003)).

Based upon our *de novo* review of the record, we conclude (as did the hearing justice) that, as a matter of law, plaintiff could not establish the requisite elements of a contract because there was simply no legal consideration on Ms. DeLuca's part.[2]

With respect to plaintiff's exhaustion of administrative remedies, the pertinent principle is that, "[a]s a general rule, a plaintiff first must exhaust his [or her] administrative remedies before seeking judicial review of an administrative decision." *Downey v. Carcieri*, 996 A.2d 1144, 1150 (R.I.2010) (brackets in original) (internal quotation marks omitted); *see also Richardson v. Rhode Island Department of Education*, 947 A.2d 253, 259 (R.I.2008). A corollary to that principle is that there exists "an exception to the exhaustion requirement when exhaustion of administrative remedies would be futile." *Richardson*, 947 A.2d at 259 (internal quotation marks omitted).

In the case at bar, it is undisputed that the plaintiff did not exhaust her administrative remedies. On appeal, Ms. DeLuca has summarily asserted that it would have been futile for her to exhaust her administrative remedies; but she has not provided this Court with any basis upon which we might be able to evaluate that assertion. Accordingly, we are in agreement with the hearing justice that the plaintiff has failed to establish that it would have been futile for her to exhaust her administrative remedies.

2. Having determined that Ms. DeLuca's breach-of-contract claim fails for want of consideration, we need not and do not address whether or not the letter of May 1, 1998 would have satisfied the other elements of a binding contract.

For the reasons set forth in this order, we affirm the judgment of the Superior Court. The record in this case may be returned to that tribunal.

Chief Justice SUTTELL did not participate.